**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

HOWARD PORTER,

      Plaintiff,

v.                                       Case No. 6:16-cv-1379-Orl-37DCI

THE CITY OF PORT ORANGE; BOB
FORD; DREW BASTION; DENNIS
KENNEDY; ALLEN GREEN; DONALD
BURNETT; CHRISTINE HARING;
THOMAS HARING; MARGIE
PATCHETT; JACQUELINE BODNER;
and NICOLE SANCHEZ,

      Defendants.

_____

**ORDER**

This cause is before the Court on the following:

1. Defendant Thomas Haring's Motion to Dismiss Plaintiff Howard Porter's Third Complaint and Memorandum of Law in Support (Doc. 19), filed September 8, 2016;

2. Defendant Christine Haring's Motion to Dismiss Plaintiff Howard Porter's Third Complaint and Memorandum of Law in Support (Doc. 20), filed September 14, 2016;

3. Defendant[] Jacqueline Bodner's[] Motion to Dismiss Third Complaint and Memorandum of Law in Support Thereof (Doc. 31), filed September 16, 2016;

4. Defendants Bob Ford, Drew Bastion, Dennis Kennedy, Allen Green, and Donald Burnett's Motion to Dismiss Plaintiff's Third Complaint (Doc. 32),

> filed September 16, 2016;

5. Response by Plaintiff to Defendants['] Motions to Dismiss Third Complaint (Doc. 36), filed October 17, 2016.

## BACKGROUND

As is by now commonplace, Facebook groups are the soapbox for community organizers. In the present action, Plaintiff alleges that one such group—the "Volusia County Moms" ("**VCM**")—mounted a public relations campaign to oust him from Port Orange. (Doc. 1, ¶ 19.) Specifically, on or about January 7, 2014, Plaintiff Howard Porter moved in with his uncle and father due to financial hardship. (*Id.* ¶ 17.) The residence was located in Port Orange, Florida ("**Residence**"). (*Id.*)

On January 17, 2014, an anonymous post appeared on the VCM Facebook page stating that a registered sex offender had recently taken up residence across the street from Sugar Mill Elementary School ("**January 17 Post**"). (*Id.* ¶ 20.) The January 17 Post explained that Port Orange lacked any ordinance restricting sex offenders from living near schools and urged parents to attend the next city council meeting to pass such an ordinance. (*Id.*) The ensuing Facebook discussion included comments addressing Plaintiff's criminal past. (*See id.* ¶¶ 21–22.) In particular, Defendant Nicole Sanchez commented that:

> [Plaintiff] gave up some rights when he decided he wanted to do sexual acts on a [four] year old!! And thank God this was a set up and he got busted.[] Who knows what the pictures of his own son looked like or who he sold them too [sic]!!! Convicted sexual predators should not be allowed to be so close to a school with all these innocent children!! ("**Sanchez Response**").

(*Id.* ¶ 21.)

In response to the January 17 Post, the City Council passed an emergency

2

ordinance prohibiting registered sex offenders from living less than 2,500 feet from schools, parks, playgrounds, and child-care facilities ("**Ordinance**"). (*Id.* ¶ 27.) The Ordinance was not retroactive and, therefore, did not impact Plaintiff's then-current living arrangement. (*See id.*) However, over the course of the next week, various news outlets covered the community's efforts to pass the Ordinance. (*See id.* ¶¶ 28, 32–38.) Due to the incessant media coverage and repeated threats from neighbors, Plaintiff's uncle eventually asked him to leave the Residence. (*Id.* ¶ 39.)

As a result of the alleged "false" statements made in the Sanchez Response and the attendant media coverage regarding Plaintiff's status as a registered sexual offender, Plaintiff—proceeding *pro se*—initiated this action alleging: (1) defamation; (2) defamation by implication; and (3) intentional infliction of emotional distress. (*See* Doc. 1, ¶¶ 48, 65, 74.) Plaintiff asserts these claims against two sets of Defendants: (1)  Christine Haring, Thomas Haring, Margie Patchett, Jacqueline Bodner, and Nicole Sanchez (collectively, **"Resident Defendants"**)[1]; and (2) Bob Ford, the City of Port Orange, Drew Bastion, Dennis Kennedy, Allen Green, and Donald Burnett (collectively, "**City Defendants**"). (*See id.* ¶ 21, 56.)

In his defamation claims, Plaintiff singles out only two Resident Defendants: (1) Jacqueline Bodner ("**Bodner**"), the owner of the VCM office (*id.* ¶¶ 56–57); and (2) Nicole Sanchez ("**Sanchez**"), the author of the Sanchez Response (*id.* ¶¶ 20, 60). To support his intentional infliction of emotional distress ("**IIED**") claim, Plaintiff points to: (1) Christine Haring's ("**Ms. Haring**") efforts in mounting the public relations campaign to

---

[1] To date, Plaintiff has failed to properly serve Defendants Margie Patchett (*see* Docs. 28, 49), and the City of Port Orange. Additionally, the Complaint does not assert any claims against the City of Port Orange.

force Plaintiff out of Port Orange, including her comments during the city council meeting and to the media (*id.* ¶¶ 19, 34, 84, 92); (2) Thomas Haring's ("**Mr. Haring**") refusal to inspect the Residence until Plaintiff left the premises[2]; and (3) Mr. Haring's efforts to apply the Ordinance retroactively to force Plaintiff to move (*id.* ¶¶ 26, 84). Further, Plaintiff alleges that the manner in which City Defendants passed the Ordinance violated Florida law and was done with the intent to harass Plaintiff. (*See id.* ¶¶ 78, 79.)

Presently: (1) Ms. Haring and Mr. Haring have moved separately for dismissal of the Complaint on the ground that it fails to state a cause of action (Docs. 19, 20, 31); (2) Bodner seeks dismissal of the Complaint on the ground that she is immune from suit under the Communications Decency Act, 47 U.S.C § 230 (Doc. 31); and (3) City Defendants have moved for dismissal on grounds that the Complaint is an impermissible shotgun pleading and fails to state a cause of action (Doc. 32 (collectively, "**MTDs**")).[3] On October 17, 2016, Plaintiff filed an omnibus response to the MTDs. (Doc. 36.) As such, the matter is now ripe for adjudication.

## STANDARDS

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain

---

[2] The Court is unclear how this allegation is related to Plaintiff's claims and therefore declines to address this allegation in the Order.

[3] Defendant Nicole Sanchez filed her Answer on December 1, 2016. (Doc. 46.)

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), courts limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a court may not "serve as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S at 662 (2009); *see also Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (noting that "*pro se* complaints also must comply with the procedural rules that govern pleadings").

## DISCUSSION

### I. Defamation

As a private person, to state a claim for defamation under Florida law, Plaintiff must show: (1) publication; (2) falsity; (3) the publisher's negligent disregard as to the falsity of the statement; (4) actual damages; and (5) that the statement was defamatory. *Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A–580B). However, in the Internet context, defamation suits may be barred

by the Communications Decency Act, 47 U.S.C. § 230 ("**CDA**"). *See Doe v. Am. Online, Inc.*, 783 So. 2d 1010, 1018 (Fla. 2001) (stating that "section 230 expressly bars any actions" and that "the language of this preemptive law [must be given] its plain meaning").

### A. Mr. and Ms. Haring

As to the Resident Defendants, the Complaint indiscriminately alleges a defamation claim against all five of these Defendants (*see* Doc. 1, ¶ 47), yet the Complaint identifies the Sanchez Response as the sole defamatory statement.[4] (*See id.*, ¶¶ 20, 56, 60.) As such, the Court finds that the Complaint fails to allege a single element of defamation against Mr. and Ms. Haring. (*See id.* ¶ 57, 61.) Consequently, the Harings' MTDs as to the defamation claim are due to be granted.

### B. City Defendants

The same deficiencies that plague Plaintiff's defamation claim against Mr. and Ms. Haring also plague the defamation claim against City Defendants. Indeed, Plaintiff has not identified a single defamatory statement by any City Defendant. As such, City Defendants' MTD as to Plaintiff's defamation claim is also due to be granted.

### C. Bodner

Additionally, the Complaint seeks to hold Bodner liable for the publication of the Sanchez Response due to her status as owner of the VCM office. (*Id.* ¶¶ 56–57.) However, the CDA grants immunity to a "provider or user of an interactive computer service" for "any information provided by another information content provider"[5]—that is,

---

[4] Plaintiff maintains that the Sanchez Response is false and defamatory because he never performed sexual acts with his son or any four year old, nor did he transmit naked photos of his son to any law enforcement officer. (Doc. 1, ¶ 57.)

[5] An information content provider is "any person or entity that is responsible, in

information posted by someone else. *See* 47 U.S.C. § 230(c)(1).

In support of her MTD, Bodner maintains that courts have routinely immunized owners of web sites from liability for third-party postings under § 230(c)(1). (Doc. 31, pp. 3–4.)[6] Plaintiff counters that Bodner is not a passive host; instead she is a content provider due to her "collaboration" with Defendants to further the Sanchez Response and, therefore, destroyed her § 230 immunity. (Doc. 36, pp. 3–4.) The Court disagrees with Plaintiff.

Even liberally construed, the Complaint fails to allege facts supporting Plaintiff's contention. Indeed, nothing in the Complaint can be read to ensnare Bodner in a scheme to perpetuate the Sanchez Response. Importantly, because Sanchez, not Bodner, posted the Sanchez Response, the Court finds that the policy behind the CDA warrants blanketing Bodner with immunity under the CDA at least as to Plaintiff's defamation claim. *See Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (interpreting the CDA as having established "broad federal immunity"); *see also Regions Bank v. Kaplan*, No. 8:12-cv-1837-T-17MAP, 2013 WL 1193831, at *18 (M.D. Fla. Mar. 22, 2013) (stating that "[a] 'provider' of an interactive computer service includes websites that host third-party generated content"). As such, Bodner's MTD with respect to the defamation claim is due to be granted.

---

whole or in part, for the creation or development of information provided through the internet." *See* 47 U.S.C. § 230(f)(3).

[6] The Complaint alleges that Bodner is the owner of the VCM "office." (Doc. 1, ¶ 56.) However, in addressing Bodner's CDA argument, it appears that Plaintiff considers her responsible for the content appearing on the VCM Facebook page. (*See id.* ¶ 57; *see also* Doc. 36, p. 3.)

**II.     Defamation by Implication**

Under a variation of defamation, Florida courts also recognize a claim for defamation by implication. This cause of action arises, "not from what is stated, but from what is implied when a defendant (1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts. *See Jews for Jesus*, 997 So. 2d at 1106; *see also Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014). All the protections of defamation law equally apply to claims of defamation by implication. *Jews for Jesus*, 997 So. 2d at 1108.

**A.     Resident Defendants**

As an initial matter, Plaintiff does not identify a single statement or omission by any Resident Defendant that could form the basis of a defamation by implication claim. As such, the defamation by implication claims against Bodner and the Harings are due to be dismissed.

**B.     City Defendants**

Turning now to the City Defendants, other than comments made by Vice Mayor Don Burnett ("**Burnett**"), the Complaint fails to identify any implied defamation made by other City Defendants. Indeed, Burnett's comments are the exclusive basis for Plaintiff's defamation by implication claim. (*See* Doc. 1, ¶¶ 68–72.) Thus, to the extent the Complaint asserts a claim for defamation by implication against the remaining City Defendants, it is due to be dismissed.

As to Burnett, Plaintiff alleges that he made the following comments to the Daytona Beach News Journal: "[t]o me it's like the next step. This offender has moved, but we've

8

still got four sexual predators living in the city." (*Id.* ¶¶ 28, 68, 70.) Burnett further commented that he wanted to place red public notice signs on city-owned rights of way adjacent to sexual predators' homes. (*Id.* ¶ 29.) According to the Complaint, Burnett's comments concerning Plaintiff's relocation followed by references only to "sexual predators" improperly suggest that Plaintiff is a sexual predator as opposed to a sex offender.[7] (*Id.* ¶¶ 68, 70.) For his part, Burnett argues that his comments to the media are absolutely privileged because he made them in the performance of his legislative and executive functions as the vice mayor of Port Orange. (Doc. 32, p. 8.)

It is well-settled in Florida that words spoken or written by public servants in judicial, legislative, or executive activities are protected from defamation liability, "[h]owever false or malicious or badly motivated the accusation may be." *McNayer v. Kelly*, 184 So. 2d 428, 430–32 (Fla. 1966). This absolute privilege also extends to county and municipal officers in legislative or quasi-legislative activities. *Id.* The rationale behind such absolute privilege is the public interest. *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970).

The controlling factor in determining whether the absolute privilege applies is "whether the communication was within the scope of the officer's duties." *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981) (citing *Barr v. Matteo*, 360 U.S. 564 (1959)). Such scope is liberally construed. *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995). To this point, Plaintiff argues that Burnett is beyond the protection of absolute

---

[7] According to the Complaint, the Florida Sexual Predators Act defines a "sexual predator" as a repeat sexual offender who uses physical violence or preys on children and presents an extreme threat to the public safety. (Doc. 1, ¶ 30.) Plaintiff alleges that he is a non-predatory "sex offender." (*Id.* ¶ 16.)

9

privilege because his position did not require him to comment to the media; thus, he was not performing any duty imposed on the office of vice mayor when he made such comments. (*See* Doc. 36, p. 7.) The Court disagrees. While Burnett had no affirmative duty to comment to the media, his comments were in direct response to both a public concern and a public service that his office is charged with executing—drafting and passing ordinances. *See, e.g.*, *Hauser*, 231 So. 2d at 7 (finding that city commissioner's allegedly defamatory comments to media concerning the circumstances surrounding the firing of the city prosecutor were absolutely privileged). As such, Burnett's comments fall within the scope of his duties and are afforded absolute privilege. Therefore, City Defendants' MTD as to Plaintiff's defamation by implication claim is due to be granted.

### III.    Intentional Infliction of Emotional Distress

To establish a claim for IIED, a plaintiff must show that the wrongdoer's conduct: (1) was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) was "outrageous"—that is it goes "beyond all bounds of decency, and [is] to be regarded as odious and utterly intolerable in a civilized community"; and (3) caused severe emotional distress. *Gallogly v. Rodriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007). Whether the alleged conduct is outrageous enough to support an IIED claim is a matter of law. *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993); *see also Gandy v. TransWorld Comput. Tech Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001).

While not a model of clarity, Plaintiff's IIED claim seemingly arises from an alleged conspiracy among all Defendants to evict Plaintiff from Port Orange by: (1) instigating and perpetuating a campaign to defame him; and (2) passing illegal legislation that would cast

unwonted attention on him and force him to relocate. (Doc. 1, ¶¶ 75-84.) According to the Complaint, Defendants' actions intentionally and recklessly implied that Plaintiff was a great threat to the community, which has caused Plaintiff emotional distress. (*Id.* ¶ 91, 94, 95.)

Notwithstanding the callous nature of Defendants' comments, insults and indignities do not support a claim for IIED. *See Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1345 (11th Cir. 2005); *see also Legrande v. Emmaunel*, 889 So. 2d 991, 995 (Fla. 3d DCA 2004) (concluding that plaintiff failed to state an IIED claim where defendant falsely accused plaintiff of theft in front of others); *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998) (explaining that Florida courts sparingly recognize the tort of IIED). Even accepting all of Plaintiff's allegations as true, the Court finds that Defendants' alleged conduct is not so extreme in degree as to exceed all bounds of decency. *See Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 928 (Fla. 4th DCA 2007).

In so finding, the Court ignores Plaintiff's conclusory and unsupported allegations that City Defendants not only violated Florida law when they passed the Ordinance but did so with the discriminatory intent to harass Plaintiff.[8] (Doc. 1, ¶¶ 43, 78, 81, 82.) At bottom, because Plaintiff fails to demonstrate outrageous conduct, the Complaint fails to state an IIED claim against Defendants. Therefore, the IIED claim is due to be dismissed.[9]

---

[8] Plaintiff, in conclusory fashion, alleges that he was "a victim of discrimination" (Doc. 1, ¶ 79); however, he fails to allege his status in a protected class.

[9] Plaintiff has failed to indicate whether he is proceeding against Defendants Bob Ford, Drew Bastion, Dennis Kennedy, Allen Green, and Donald Burnett ("**Council Members**") in their official or individual capacities. As the Complaint does not demonstrate that the Council Members acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, Plaintiff cannot proceed against the Council Members in their individual capacities. *See* Fla. Stat. § 768.28(9)(a).

**CONCLUSION**

In light of the foregoing, the Court finds that the factual allegations in the Complaint are insufficient to establish Plaintiff's claims for defamation, defamation by implication, and intentional infliction of emotional distress against Bodner, Mr. Haring, Ms. Haring, and City Defendants ("**Moving Defendants**"). As Plaintiff has been given two opportunities to amend his Complaint, the Court finds that amendment would be futile. (*See* Case No. 6:15-cv-1715-Orl-37DCI ("*Porter I*") Docs. 11, 17.)[10] Therefore, the Complaint is due to be dismissed with prejudice as to the Moving Defendants.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant Thomas Haring's Motion to Dismiss Plaintiff Howard Porter's Third Complaint and Memorandum of Law in Support (Doc. 19) is **GRANTED**.

2. Defendant Christine Haring's Motion to Dismiss Plaintiff Howard Porter's Third Complaint and Memorandum of Law in Support (Doc. 20) is **GRANTED**.

3. Defendant[] Jacqueline Bodner's[] Motion to Dismiss Third Complaint and Memorandum of Law in Support Thereof (Doc. 31) is **GRANTED**.

4. Defendants Bob Ford, Drew Bastion, Dennis Kennedy, Allen Green, and Donald Burnett's Motion to Dismiss Plaintiff's Third Complaint (Doc. 32) is

---

[10] Plaintiff originally filed a six-count Complaint against twenty-one Defendants. (*See Porter I* Doc. 1.) Subsequently, Plaintiff filed two distinct amended complaints (*Porter I* Docs. 23, 34), and moved to separate the latter complaint to initiate a second action (*Porter I* Doc. 22 ("**Motion to Separate**")). On August 1, 2016, U.S. Magistrate Judge David A. Baker granted Plaintiff's Motion to Separate and directed the Clerk to open a second docket for the instant action. (*Porter I* Doc. 27.)

       **GRANTED**.

5. Plaintiff's claims against Defendants Jacqueline Bodner, Thomas Haring, Christine Haring, Bob Ford, Drew Bastion, Dennis Kennedy, Allen Green, and Donald Burnett are **DISMISSED WITH PREJUDICE**.

6. Plaintiff may proceed against Defendant Nicole Sanchez.

7. The Clerk is **DIRECTED** to **TERMINATE** Jacqueline Bodner, Thomas Haring, Christine Haring, Bob Ford, Drew Bastion, Dennis Kennedy, Allen Green, Donald Burnett, and the City of Port Orange as defendants in this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 15, 2016.

*[Signature]*
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record