UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOWARD PORTER,

    Plaintiff,

v.                                                    Case No. 6:16-cv-1379-Orl-37DCI

NICOLE SANCHEZ,

    Defendant.
_____

**ORDER**

Every word has consequences. For Defendant Nicole Sanchez ("**Ms. Sanchez**") the consequences of her words in an allegedly defamatory Facebook post place her at the center of this action—the second brought by *pro se* Plaintiff Howard Porter ("**Mr. Porter**"). (Doc. 1; *see also Porter v. City of Port Orange*, Case No. 6:15-cv-1715-Orl-37DCI ("***Porter I***").) Ms. Sanchez now moves for summary judgment on the claims asserted against her, arguing that she is entitled to judgment as a matter of law. (Doc. 82 ("**Motion**").) Without a timely response from Mr. Porter, the unopposed Motion is now ripe. For the following reasons, the Court finds that the Motion is due to be granted.

I.     **BACKGROUND**

On October 16, 2003, Mr. Porter was convicted of three counts of transporting and shipping child pornography and seven counts of possession of child pornography. *See United States v. Porter*, Case No. 1:03-cr-129-RJD-CLP-1 (E.D.N.Y. Jan. 3, 2003), Doc. 133 ("***Porter Criminal Case***"). This conviction required Mr. Porter to register as a sex offender

in each jurisdiction where he resided under the Sex Offender Registration and Notification Act.[1] (*See Porter Criminal Case*, Doc. 246.) Following his release, Mr. Porter moved to Port Orange, Florida to live with his uncle and father ("**Residence**"), and, as required, he registered as a sex offender in the State of Florida on January 7, 2014. (Doc. 1 ¶ 17.) The Residence faced Sugar Mill Elementary School ("**School**"). (*See id.* ¶¶ 18, 20.)

Concerned about the proximity of Mr. Porter's Residence to the School, a Port Orange parent took to Facebook on January 17, 2014, to express concern that the city lacked an ordinance restricting sex offenders, like Mr. Porter, from living near schools and urged parents to attend the next City Council meeting to pass such an ordinance. (*Id.* ¶ 20.) Over the course of the next three days, a spate of responses poured in (*id.* ¶¶ 21–22), including one from Ms. Sanchez stating:

> [Mr. Porter] gave up some rights when he decided he wanted to do sexual acts on a 4 year old!! And thank God this was a set up and he got busted. Who knows what the pictures of his own son looked like or who he sold them [to]!!! I don't feel this man should have the right to sit in his living room all day and gaze out his window at all these children. And possibly take pictures [without] anyone knowing!!!
> . . .
> Convicted sexual predators should not be allowed to be so close to a school with all these innocent children!! Please come to the meeting and let's change some ordinances!

(*Id.* ¶ 21 ("**Reply Post**").)

Thereafter, the city passed an emergency ordinance prohibiting registered sex offenders from living less than 2,500 feet from schools, parks, playgrounds, and

---

[1] *See* 34 U.S.C. § 20911 (defining a "sex offender" as "an individual who was convicted of a sex offense").

child-care facilities ("**Ordinance**"). (*Id.* ¶ 27.) A rash of news outlets covered the community's efforts to pass the Ordinance, and due to the incessant media coverage and repeated threats from neighbors, Mr. Porter eventually moved away. (*See id.* ¶¶ 28, 32–39.)

Against this backdrop, Mr. Porter initiated suit against twenty-one defendants, including four media outlets and their employees (collectively, "**Media Defendants**"), and numerous Port Orange residents (collectively, "**Resident Defendants**"). (*See Porter I*, Doc. 1.) On June 13, 2016, Mr. Porter simultaneously filed two third amended complaints—one against the Media Defendants (*Porter I*, Doc. 23) and the other against the Resident Defendants, including Ms. Sanchez (*Porter I*, Doc. 24). On August 1, 2016, the Court severed the third amended complaint against the Resident Defendants and created the instant case ("***Porter II***"), in which Ms. Sanchez remains as the only defendant. (*See Porter I*, Doc. 27; *see also* Doc. 1.)

Reading the *Porter II* Complaint liberally, Mr. Porter asserts two claims against Ms. Sanchez: (1) defamation ("**Defamation Claim**"); and (2) intentional infliction of emotional distress ("**IIED Claim**").[2] (Doc. 1, ¶¶ 47–63, 73–95).) Mr. Porter seeks both compensatory and punitive damages. (*Id.* ¶¶ 62–63, 94–95.) Despite the Court's prodding (*see* Doc. 83), Mr. Porter did not respond to the Motion, and it is now ripe for the Court's consideration.

---

[2] Although Mr. Porter also asserts a claim for defamation by implication, it is not asserted against Ms. Sanchez. (*See* Doc. 1, ¶¶ 68–72.)

## II. LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, she must affirmatively show the absence of a genuine issue of material fact and support her motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of her case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys.*, 941 F.2d 1428, 1438 (11th Cir. 1991)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) she may simply point out an absence of evidence to support the nonmoving party's case; or (2) she may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove [his] case at trial." *Four Parcels*, 941 F.2d at 1438 (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the

nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflict arises between the facts evidenced by the parties, [the] court credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). However, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### III. ANALYSIS

The gravamen of Mr. Porter's claims is that Ms. Sanchez exposed him to hatred, contempt, and ridicule in the community; and caused him severe emotional distress by publishing the Reply Post, which falsely accused him of sexual acts he never committed and improperly labeled him as a sexual predator, rather than a non-predatory sexual offender.[3] (Doc. 1, ¶ 56, 60, 91–93.)

**A.    Defamation Claim**

"[T]here is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). To that end, a plaintiff may sue under a state's defamation law. Under Florida law, to prove a communication was defamatory a plaintiff must show: (1) publication; (2) falsity; (3) that the defendant acted with actual malice, that is, with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person ("**Fault Requirement**");

---

[3] The Florida Sexual Predators Act defines a "sexual predator" as a repeat sexual offender who uses physical violence or preys on children and presents an extreme threat to the public safety. (Doc. 1, ¶ 30.)

(4) actual damages; and (5) that the statement was defamatory. *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

Ms. Sanchez attacks only two elements of the Defamation Claim. First, she argues that Mr. Porter cannot show that the Reply Post was defamatory because it was pure opinion ("**Opinion Argument**"). (Doc. 82, p. 4.) Second, Ms. Sanchez contends that Mr. Porter cannot prove the Fault Requirement ("**Fault Argument**"). (*Id.*) Additionally, Ms. Sanchez contends that she is entitled to summary judgment on her affirmative defense that the Defamation Claim is barred by the applicable statute of limitations period ("**SOL Argument**"). (*Id.* at 3.) The Court finds it unnecessary to address Ms. Sanchez's Opinion and SOL Arguments because she has prevailed on her Fault Argument.

Florida defamation law requires a plaintiff to prove fault. *See Rapp*, 997 So. 2d at 1106. The level of fault a plaintiff must prove turns on his status as a public figure or private individual. *See Silverster v. Am. Broadcasting Cos., Inc.*, 839 F.3d 1491, 1493 (11th Cir. 1988). Here, Ms. Sanchez assumes that Mr. Porter was a public figure. (Doc. 82, p. 4.) Public officials and public figures cannot recover damages for defamatory falsehoods absent a showing that the false statement was made with actual malice—that is, with knowledge that it was false or with reckless disregard for its truth. *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130 (1967) (extending *New York Times* protection to public figures). According to Ms. Sanchez, Mr. Porter has failed to make the requisite showing of actual malice. (Doc. 82, p. 4.)

But the actual malice standard does not extend to private individuals, and the fact that the expression concerns a public issue, by itself, does not heighten a private individual's showing of fault. *Gertz*, 418 U.S. at 343. As such, a private figure must only make a showing of negligence. *Id.* at 346–47; *see also Straw v. Chase Revel, Inc.*, 813 F.2d 356, 360 (11th Cir. 1987); *Rapp*, 997 So. 2d at 1106. Here, even if the Reply Post arguably implicates an issue of public concern, this, standing alone, does not require Mr. Porter to show actual malice. *See Gertz*, 418 U.S. at 343. A "private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Wolston v. Readers Digest Ass'n, Inc.*, 443 U.S. 157, 167 (1979). Furthermore, an individual must have been a public figure prior to the particular defamatory statement at issue in the litigation. *See Silvester*, 839 F.2d at 1496. In other words, Ms. Sanchez cannot foist the status of public figure on Mr. Porter by ginning up media coverage concerning the Reply Post. Hence Mr. Porter, as a private figure, only had to show that Ms. Sanchez negligently published the Reply Post.

Notwithstanding this lesser burden, Mr. Porter has not introduced any affirmative evidence that Ms. Sanchez published the Reply Post even negligently. Indeed, nothing in the record indicates that Ms. Sanchez was even aware of the distinction between "sexual predator" and "sexual offender" when she published the Reply Post. Absent a showing of fault, Mr. Porter has failed to create a genuine issue of material fact that would preclude summary judgment. A contrary conclusion would be at odds with *Gertz*, 418 U.S. at 353, which prohibits the imposition of liability without fault. Hence the Motion is due to be granted as to the Defamation Claim.

**B.      IIED Claim**

Although Mr. Porter does not identify Ms. Sanchez in the IIED Claim, he does allege that he suffered "abuse by the citizens of Port Orange . . . as shown on January 17, 2014," including the [Reply Post]. (*See* Doc. 1, ¶ 76.) Liberally construing the *Porter II* Complaint, Mr. Porter claims that Ms. Sanchez acted "intentionally [or] recklessly when [she] implied that [he] was a greater threat to the community" and that the Reply Post was outrageous because it was part of a campaign to oust Mr. Porter from the community, causing him severe emotional distress.[4] (*See id.* ¶¶ 91–93.) Ms. Sanchez argues that the IIED Claim is simply an improper repetition of the Defamation Claim. (*See* Doc. 82, p. 4.) The Court agrees.

Florida courts have held that the outrageous conduct supporting a claim for IIED must be separate from, or independent of, the alleged defamation. *See, e.g.*, *Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. 5th DCA 1983). With respect to Ms. Sanchez, the "outrageous conduct" Mr. Porter complains of is the alleged defamatory Reply Post. (Doc. 1, ¶¶ 91–92.) But Mr. Porter "cannot transform a defamation claim into a claim for [IIED] simply by characterizing the alleged defamatory statement as outrageous." *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (1992). As such, the Motion is due to be granted as to the IIED Claim.

---

[4] The remainder of the IIED Claim addresses former defendants and other statements not relevant for purposes of this summary judgment Order. (*See* Doc. 1, ¶¶ 77–90.)

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Nicole Sanchez's Motion for Summary Judgment and Memorandum of Law in Support (Doc. 82) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant Nicole Sanchez and against Plaintiff Howard Porter on Counts I and III of the Complaint (Doc. 1, ¶¶ 47–63, 73–95.)

3. The Clerk is also **DIRECTED** to terminate all pending deadlines and to close this file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 7, 2017.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro se* party